**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SAUL WILLIAMS, # 354032                    *

Petitioner                                 *

v                                          *        Civil Action No. CCB-13-3755

FRANK B. BISHOP, WARDEN, et al.            *

Respondents                                *
                                         ***

**MEMORANDUM**

Pending is Saul Williams' ("Williams") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents, the Warden of Western Correctional Institution[1] and the Attorney General of Maryland, by their counsel, have filed a response, (ECF No. 10), to which Williams has replied. (ECF No. 12). After considering the pleadings, exhibits, and applicable law, the court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2014); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts"; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (explaining that 28 U.S.C. § 2254(e)(2) does not necessarily entitle a petitioner to an evidentiary hearing).

**BACKGROUND**

Williams, an inmate at Western Correctional Institution in Cumberland, Maryland, and who is self-represented in this proceeding, is challenging his convictions for possession with the intent to distribute cocaine, possession of cocaine, conspiracy to distribute cocaine, and

---

[1] Richard J. Graham, Jr. is warden of Western Correctional Institution. Brian Frosh is Attorney General of the State of Maryland. *See* Fed. R. Civ. P. 25(d) (providing an action does not abate when a public officer who is a party in an official capacity ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party).

possession with intent to distribute drug paraphernalia following a jury trial in the Circuit Court

for Baltimore County, Maryland.  In 2009, Williams, a repeat offender, was sentenced to twenty-

five years of imprisonment for the possession with intent to distribute cocaine conviction; a

concurrent term of five years of imprisonment, suspended, for the conspiracy conviction; and

two consecutive years of imprisonment for the possession with the intent to distribute drug

paraphernalia conviction.  The remaining conviction was merged at sentencing. (Ex. 1, p. 1). [2]

## PROCEDURAL HISTORY

Williams appealed his convictions, raising two questions of trial court error on direct

appeal in the Court of Special Appeals of Maryland:

1) Did the trial court err in admitting evidence concerning the nature of Bernard Dennis' relationship with Williams?

2)  Did the trial court err in admitting evidence concerning the length of the police investigation of Williams?

(Ex 6, pp. 1, 4; *see also* Exs. 4, 5).

The Court of Special Appeals summarized the facts adduced at trial as follows:

At trial, Detectives Milton Duckworth and Christopher Bishop, of the Baltimore County Police Department, testified that they were involved in an investigation of Williams and his girlfriend, Tiffany Swan, for possible drug distribution. As a result of the investigation, a search and seizure warrant was issued for Williams. Swan and Williams's residence was located at 8326 Philadelphia Road, room number 3 of the El Rich Motel. On January 31, 2008, detectives prepared for execution of the search warrant.

Detectives first established surveillance near Williams's residence in the area of Old Philadelphia Road and Route 40. Detective Sergeant Patrick Kamberger and Detective Jeffrey Dunham, also of the Baltimore County Police Department, assisted with the surveillance. While en route to the surveillance location, Detective Duckworth observed a gray Chevrolet Camaro in the area of Neighbors Avenue. He made note of the vehicle and alerted the other detectives to its presence.

---

[2]  All exhibits in this case were filed by respondents and are docketed at ECF No. 10.

At approximately 3:20 p.m., Detective Duckworth observed Swan walk from the El Rich Motel to meet briefly with a gentleman riding a bicycle in front of Stewart's Rootbeer on Route 40. Detective Duckworth believed that the encounter was a drug transaction. After the encounter, Swan returned to a motel room in the back of the El Rich Motel. The detective continued surveillance.

At 5:45 p.m., Detective Duckworth was advised by Detective Bishop that the gray Camaro was in the parking lot of the On Loc Bar, located at 8213 Pulaski Highway, across from the El Rich Motel. He was further advised by Detective Bishop that Swan had entered the passenger side of the gray Camaro, which then traveled to the parking lot of Burger King, almost directly across the street from the El Rich Motel. Swan exited the vehicle at Burger King, and it proceeded southbound on Old Philadelphia Avenue and back to Neighbors Avenue. After the gray Camaro left, Williams met Swan in the Burger King parking lot. Detective Duckworth believed that Swan's encounter with the individual in the gray Camaro was another drug transaction. Detective Duckworth followed the gray Camaro. When it stopped on Neighbors Avenue, Detective Duckworth approached the driver, who was identified as Bernard Dennis, and told him to turn over the drugs. Dennis complied and handed the detective two baggies containing crack cocaine. Dennis was then arrested.

Detective Duckworth advised Detective Bishop that Dennis was in possession of cocaine. After receiving that information, Detective Sergeant Kamberger and Detective Bishop stopped and detained Williams and Swan pending execution of the search warrant. A search of Swan revealed a baggie of crack cocaine, two cellular telephones, and the key to another room at the El Rich Motel. A search of Williams revealed the key to Williams's residence and a cellular telephone.

Detectives then executed the search warrant at Williams's residence. They could smell the odor of burnt marijuana upon entering the room. During their search, detectives recovered an orange pill and burnt marijuana cigar ends from the bedroom floor. They also seized 11 cellular telephones. In a shoe box, in the bedroom closet, the detectives located Williams's residency papers and rental payment receipts, 7 hotel keys, a Blackberry and an "owe sheet."[3] In addition, the detectives recovered 15 baggies of crack cocaine from inside a ceiling tile over the kitchen cabinets. The baggies were identical to those seized from Dennis. Detective Duckworth and Detective Bishop opined at trial that the crack cocaine was intended for distribution. Williams did not testify or present any witnesses.

(Ex. 6, pp. 1-4) (footnotes in original omitted). On January 4, 2011, the Court of Special Appeals

affirmed the decision of the trial court. (Ex. 6).

---

[3] An "owe sheet" is a "business" record maintained to track money spent and received in drug transactions. (Ex. 3, p. 102; *see also* Ex. 6, n. 5).

Williams, proceeding pro se, filed a petition for writ of certiorari in the Court of Appeals of Maryland, presenting the following issues:

1. Did the State [sic] err by refusing to strike a certain answer given by a testifying witness?

2. Did the trial court err by not instructing the jury that a statement by Mr. Dennis entered into evidence against the Defendant was not to be used?

3. Did the trial court err by admitting evidence concerning the nature of Bernard Dennis' relationship with Williams?

4. Did the trial court err by admitting evidence concerning the length of time police had been observing 8326 Old Philadelphia Road?

(Ex. 7, p. 2). On April 25, 2011, the Court of Appeals summarily denied the petition, stating there was no showing that certiorari review was desirable and in the public interest. (Ex. 8).

On May 13, 2011, Williams filed a petition for post-conviction relief in the Circuit Court for Baltimore County which he later supplemented. (Ex. 1, p. 9; Ex. 9).[4] The State filed answers to Williams' petition and supplemental petition. (Ex. 10, 11).

On November 8, 2012, a hearing on the post-conviction petition was held before the Honorable Ruth A. Jakubowski. (Ex. 12). As argued and supplemented at the hearing, Williams claimed his trial counsel was ineffective by: 1) "opening the door"[5] to evidence that would be otherwise impermissible through the questions asked of State witnesses during cross-examination; 2) failing to argue the prejudicial effect of the otherwise impermissible evidence

---

[4]   Neither party has filed a copy of the supplemental petition. Respondents, by their counsel, indicate they were unable to locate a copy. (ECF No. 10, p. 7, n. 2). The supplemental petition is addressed in the circuit court's order and opinion denying post-conviction relief. (ECF No. 10, p. 7, n. 2; Ex. 13). Also, in his self-represented application for leave to appeal the denial of post-conviction relief, Williams summarized the claims he presented to the post-conviction court as ineffective assistance of trial counsel for failing to: 1) argue the prejudicial effect of impermissible evidence and testimony; 2) pursue all avenues of questioning; 3) interview state witnesses thoroughly before trial; 4) conduct an adequate pre-trial investigation; 5) file a motion to suppress; and 6) provide an effective defense. (Ex. 14, p. 1).

[5]   In Maryland, the "opening the door" doctrine permits admission of evidence previously irrelevant but made relevant by an opponent's admission of other evidence on the same issue. *Mitchell v. State,* 408 Md. 368, 388 (2009); *see also* Ex. 6, pp. 12-13.

and to preserve this issue for appeal; 3) failing to pursue all avenues of questioning during cross-examination; 4) failing to seek out, interview, and call at trial two critical witnesses who would have testified in Williams' defense that the narcotics seized by police did not belong to him; 5) failing to thoroughly interview the State's witnesses before trial; 6) failing to object to the State advising that it would bring additional charges against Williams on the day of trial if he called Tiffany Swan as a witness; 7) failing to conduct an adequate pre-trial investigation into the factual basis for the State's charges against Williams; 8) failing to file a pre-trial motion to suppress evidence that was obtained through illegal search and seizure.  (Ex. 12; Ex. 13, pp. 1-2).[6]  On January 16, 2013, the petition for post-conviction relief was denied. (Ex. 13).

Williams, proceeding pro se, filed an application for leave to appeal the denial of post-conviction relief.  He asserted his trial counsel's examination of state witness Bernard Dennis "opened the door" to testimony about his prior bad acts, in addition to Dennis's prior consistent statement to the police.[7] Williams faults counsel for failing to challenge testimony about his prior bad acts, thereby damaging his defense. (Ex. 14, p. 3).  Williams also disputed the post-conviction court's determination that trial counsel's decisions were strategic.  Further, Williams argued trial counsel failed to conduct a thorough cross-examination of a police witness about his observations of Williams' activities at 8326 Old Philadelphia Road, the subject of the search warrant, and the officer's conclusion that Schanchez Lachol Roberson**,** the only person police found in Williams' residence during the execution of the search warrant, was a new arrival to the location. (Ex. 14, p. 2; *see also* Ex. 2, pp. 160, 167-168).  Williams also argued he was entitled to relief based on the cumulative effect of trial counsel's errors and questioned whether counsel

---

[6] At the post-conviction hearing, Williams withdrew his claims of prosecutorial misconduct. (Ex. 12, pp. 27- 29).

[7] Dennis' statement to police was appended to Williams' brief on direct appeal to the Court of Special Appeals. (Ex. 4, App. pp. 8-9).

should have challenged the search warrant for lack of probable cause. (Ex. 14, pp. 4-5). On

November 8, 2013, the Court of Special Appeals summarily denied Williams' application for

leave to appeal in an unreported opinion.  (Ex. 15). The mandate issued on December 9, 2013.

*Id.*

## PETITIONER'S CLAIMS

In this petition for federal habeas corpus relief, Williams claims trial counsel provided

constitutionally ineffective assistance. Specifically, he alleges his trial counsel was ineffective

by: 1) opening the door, during cross-examination of Bernard Dennis, to the admission of prior

bad acts evidence involving Williams; 2) failing to argue the prejudicial effect of the prior bad

acts evidence when admitted; 3) failing to investigate the case sufficiently, including failing to

file a motion to suppress the search warrant for lack of probable cause; and 4) failing to cross-

examine witnesses effectively. (ECF 1, pp. 5-11).[8]

## ANALYSIS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal

courts may not grant a petitioner's habeas petition where the state court adjudicated the

petitioner's habeas claims on the merits unless the state court's decision: 1) "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the

---

[8]  The court has reworded and combined several of the claims set forth in this § 2254 petition to avoid overlap and
repetition:  Williams' grounds 1 and 6 (opening the door to otherwise impermissible evidence and opening the door
to prior bad acts) are combined as Claim One; Williams' grounds 2 and 6 (failing to argue prejudicial effect of
impermissible evidence and opening the door to prior bad acts) are combined as Claim Two;  and Williams' grounds
3 and 4 (failure to conduct an adequate pre-trial investigation and failure file a motion to suppress) are combined as
Claim Three in this memorandum. Williams' ground 5 is discussed as Claim Four in this memorandum.

State court proceeding." 28 U.S.C. § 2254(d). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014) (citing *White v. Woodall*, _ U.S. _, 134 S.Ct. 1697, 1699 (internal quotation marks omitted)). Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

The habeas statute also provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

To establish a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must show: 1) counsel's performance was deficient, and 2) the performance prejudiced the

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The standard is "highly deferential." *Id*. at 689.

Under the first prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."   *Id*. at 688. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review because a defendant must overcome the " 'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' " *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. 86, 109 (internal quotation marks and citation omitted). "[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel .... [t]he AEDPA standard and the *Strickland* standard are dual and overlapping…" and the two standards are applied "simultaneously rather than sequentially." *Lee v. Clarke*, 781 F.3d 114, 123 (4th Cir. 2015), (citing *Harrington v. Richter*, 562 U.S. 86 (citations omitted). Because both standards of review are " 'highly deferential' to the state court's adjudication ... 'when the two apply in tandem, the review is doubly so.' " *Id*. (citing and quoting *Richter*, 131 S.Ct. at 788).

To satisfy the prejudice prong of an ineffective assistance of counsel claim, a petitioner must show 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Using this framework, Williams' claims of ineffective assistance of counsel will be considered in turn.

### 1.  Ineffective Assistance of Trial Counsel for Opening The Door To Williams' Prior Bad Acts

Williams faults his trial counsel Jennifer Aist for her cross-examination of state's witness Bernard Dennis ("Dennis") as opening the door to "otherwise impermissible evidence."[9] (ECF No. 1, p. 5). Additionally, Williams complains trial counsel's cross-examination of state's witness Detective Milton Duckworth allowed the prosecutor to elicit information about the length of the investigation and surveillance. Williams questions whether such "detrimental error" was the product of sound trial strategy. (ECF No. 1, p. 10).

Williams describes the information elicited during cross-examination as:

> … helpful at filling in the gaps for the prosecutor. He [Dennis] speak's [sic] on attempts to purchase hotel rooms. There was numerous old room keys discarded and put in evidence.  His statement and testimony gave the jury reason to believe this incident was not isolated. This unfairly tainted the minds of the jury. Without the jury hearing of detectives [sic] surveillance, this could've been a possession only.  As a skilled trial attorney, Ms. Aist should've been aware that certain questions are just too dangerous.

(ECF No. 1, p. 6).

In response to questions posed by trial counsel during cross-examination, Dennis testified he met Williams prior to January 31, 2008, and had previously purchased drugs from Swan between five and ten times. (Ex. 3, pp. 18-19). Trial counsel asked him, "You said you talked on the phone to [Williams]. How do you know it was [Williams] and not somebody else." *Id.* at. 20. Dennis replied, "I knew his voice. I spoke to him before I knew who it was. It was his

---

[9]   This evidence included the statement Dennis made to police after his arrest. (Ex. 4, App. 8).

number." *Id*. at 21. Later at the post-conviction hearing, trial counsel explained her strategy in posing the question was to discredit Dennis by showing he was a drug user. (Ex. 12, p. 94).

Trial counsel asked Dennis whether the State offered him a deal in exchange for his testimony against Williams. (Ex. 3, pp. 21-23). Dennis testified he had not received a plea offer from the State and charges were pending against him. *Id*. Defense counsel then asked Dennis if he realized his testimony could jeopardize his case, to which he replied, "I've already written a statement. So whatever is on this statement is going to be the statement. I'm just telling the truth." *Id*. at 23.

Later, the trial court ruled defense counsel's questions had opened the door to the prosecutor's inquiry on re-direct about Dennis's prior relationship with Williams. (Ex. 3, pp. 27-28). On re-direct, Dennis testified that he had bought drugs from the same woman in the past and made arrangements to buy drugs by "calling JR," the name he called Williams. *Id*. at 24. This prompted a bench conference, during which the prosecutor asked to inquire into Dennis's relationship with Williams because defense counsel had "opened the door" to the inquiry. *Id*. at 25. Outside the presence of the jury, the prosecutor asked Dennis about his relationship with Williams, and Dennis answered, "I had bought drugs from him in the past." *Id*. at 27. After argument from Williams' counsel and over her objection, the trial court allowed the questioning. *Id*. at 27- 28. Before the jury, when asked about his relationship with Williams, Dennis testified, over objection, "I bought drugs from him." *Id*. at 31. Dennis' statement to the police was also admitted, over defense objection, during the prosecutor's re-direct examination of Dennis, as a prior consistent statement offered to rehabilitate Dennis' credibility. *Id*. at 29-33; Ex. 4, App. 8-9.[10]

---

[10] The statement reads in part:

Williams also claims trial counsel's representation was deficient based on her cross-examination of Detective Duckworth which "opened the door" to allow the prosecution to elicit information about the length of the investigation and surveillance. (ECF. No. 1, pp. 9-11). Williams argues this "detrimental error" was not the product of sound trial strategy.  (ECF. No. 1, p. 11).

During her cross-examination of Detective Duckworth, trial counsel established that during the execution of the search warrant, police found a woman, Schanchez Lachol Roberson, inside Williams' residence. (Ex. 2, pp. 160, 168). Trial counsel asked whether Roberson was charged with possession of the cocaine that was found in the residence, and Duckworth testified that Roberson was charged with possession of marijuana and drug paraphernalia, but not possession of cocaine. *Id.* at 160, 167-68. On re-direct, the prosecutor asked Duckworth to explain why Roberson was not charged with possession of cocaine. *Id.* at 169.  Duckworth testified that he had never seen Roberson at Williams' residence before during surveillance. *Id.* During re-cross, defense counsel asked Duckworth, "Did you conduct surveillance at that address every day?"   *Id.* at 170. Duckworth answered "No." *Id.* Over defense counsel's objection, the trial court permitted the prosecutor to ask Duckworth on re-direct how long he had been conducting surveillance, and he testified the investigation started in October of 2007. *Id.* at 170-172.

In rejecting the petition for state post-conviction relief, the Circuit Court for Baltimore County stated:

> I purchased cocaine on numerous occasions from JR. [Williams] and his girl (black female). I once purchased a motel room for JR. at the El Rich and put it in my name.  He has asked me several times to rent rooms. But I declined.  On January 31, 2008, I called JR. and said I wanted to buy some coke he instructed me to meet his girlfriend at the liquor store parking lot. I went there and met her. She got in my car and I gave her $40 for cocaine. I left her off at the Burger King.  I proceeded to Neighbors Rd. where I was arrested.

(Ex. 4 at App. 8-9).

At Petitioner's criminal jury trial, one State witness, Bernard Dennis, testified on direct examination to having called Petitioner on the night of his arrest to ask whether he had any cocaine for sale. (Transcript. p. 15). According to Petitioner, by challenging Mr. Dennis' credibility during cross-examination, trial counsel opened the door to the admission of Mr. Dennis' testimony on re-direct that he had purchased drugs from Petitioner in the past as well as the admission of Mr. Dennis' written statement echoing his testimony. A second witness, Detective Duckworth, testified that Schanchez Lachol Roberson, a female defendant found in the Petitioner's apartment during the execution of a search warrant, was charged with possession of marijuana but not with possession of cocaine because she was believed to be a visitor. (Transcript, p. 160, 168). Petitioner contends that by establishing on cross-examination that Detective Duckworth did not conduct daily surveillance of Petitioner's residence in order to cast doubt on his statement that the cocaine found in the residence did not belong to the female defendant, trial counsel opened the door to the State questioning Detective Duckworth about the overall length of the police investigation of Petitioner on re-direct in order to explain his basis for making the statement.

During the November 8, 2012 Post Conviction hearing, Jennifer Aist, who served as Petitioner's trial counsel, responded to Petitioner's allegations regarding her cross-examination of State witnesses. Ms. Aist testified that her cross-examination questions were based on trial strategy to diminish the credibility of State witnesses. Ms. Aist further testified that she did not intend to bring out Petitioner's prior bad acts during trial.

After reviewing the trial transcript, considering the testimony given at the Post Conviction hearing, and contemplating relevant case law, this Court finds that Petitioner's allegation of ineffective assistance of counsel based on opening the door to otherwise impermissible evidence is without merit. Without further evidence, Petitioner neither has shown that his trial counsel's actions in questioning State witnesses as she did during cross-examination fell below an objective standard of reasonableness nor overcome the presumption that, under the circumstances, the challenged action was sound trial strategy. In this way, trial counsel's unintended act of opening the door to evidence of Petitioner's prior bad acts through the questions asked of State witnesses during cross-examination does not amount to a deficient performance and did not prejudice Petitioner's defense.

(Ex. 13, pp. 5-6; *see also* Ex. 3, pp. 11-33; Ex. 4, App. 8-9).

At the post-conviction hearing, trial counsel Aist testified that she is the circuit court supervisor for the Office of the Public Defender for Baltimore County and has extensive experience as a defense attorney. (Ex. 12, p. 76).  She told the post-conviction court that she did not plan to bring out Williams' prior bad acts during trial, but rather intended to use cross-

examination to discredit state witness testimony. (Ex. 12, p. 94). After considering Aist's testimony and the trial transcript, the post-conviction court concluded that Williams had failed to show trial counsel's questioning of state witnesses Dennis and Duckworth fell below an objective standard of reasonableness and also had failed to overcome the presumption that counsel's actions constituted sound trial strategy. (Ex. 13, p. 6).

Defense counsel's determinations concerning witness examination fall within the ambit of trial strategy that federal habeas courts are not inclined to second-guess. *See United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). Decisions about questioning witnesses require the balancing of risks and benefits and therefore warrant "enormous deference" from reviewing courts. *Id.*; *see also United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010).

The state post-conviction court's determination that defense counsel's cross-examination was based on sound trial strategy and professional judgment is supported by the record and entitled to the highly deferential review mandated under the habeas statute and as interpreted by case law. The trial and post-conviction transcripts show that defense counsel's cross-examination was intended to discredit Dennis by highlighting his drug use and by suggesting that he was testifying for the prosecution in hopes of securing a deal from the State. (Ex. 3 pp. 21-23; Ex. 12, p. 94). Williams has not sustained his burden to show the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As there is no demonstration of constitutionally deficient representation, the state court decision will not be disturbed and habeas corpus relief will be denied as to this claim.

Although the state post-conviction court did not reach the prejudice prong of *Strickland* in its discussion of this claim, it bears noting the other evidence introduced against Williams at trial was ample, and he fails to show a reasonable probability that but for the testimony at issue here, the outcome of his trial would have been different. *See Strickland*, 466 U.S. at 694. The evidence at trial showed that Williams, acting in concert with others, possessed and distributed cocaine and drug paraphernalia in Room 3, 8326 Old Philadelphia Road. Dennis testified that he knew Williams' phone number and called him on January 31, 2008, to buy cocaine. Williams told Dennis that he had cocaine to sell, and he directed Dennis to meet Swan, an individual Dennis had met before, and from whom he purchased cocaine on January 31, 2008. In addition, execution of the search warrant on Williams' residence produced 15 baggies of suspected crack cocaine, rent receipts indicating Williams had rented and resided in the room, and an "owe sheet."  Further, when Dennis was arrested on January 31, 2008, after the police observed him meeting with Swan in the parking lot of the liquor store near Williams' residence, police recovered two baggies of suspected cocaine from Dennis, packaged the same way as the baggies seized from Williams' residence. For these reasons, no prejudice, as is required under *Strickland*, is shown.

### 2.   Claim Trial Counsel was Ineffective for Failing to Argue the Prejudicial Effect of Prior Bad Acts Evidence

Next, Williams claims the trial court's "numerous harmful errors" resulted in a "snowball effect" which cumulatively prejudiced him and altered the outcome of his trial. (ECF No. 1, p. 7). "The huge effect of impermissible testimony and statements substantially overshadowed the defense attempts to salvage reasonable doubt. At the start of trial, the state had a shady state witness and uncertain detective." *Id.*

Williams argued on direct appeal that the trial court erred by admitting evidence of his relationship with Dennis. (Ex. 6, p. 1). The Court of Special Appeals determined Williams waived the issue by failing to advance it in the trial court. *Id.* at 12-13. The Court of Special Appeals further found that the evidence elicited by the prosecutor on re-direct questioning was relevant and admissible "in response to defense counsel's attack on Dennis's credibility." *Id.* at 12. The court observed that even if the issue were not waived, the evidence was properly admitted by the trial court because testimony about Dennis' relationship with Williams was "highly probative of Dennis's ability to identify Williams as the person who arranged the drug transaction with Swan over the telephone, given that there was little direct evidence tying Williams to the actual sale of the drugs." *Id.* at 14. The court concluded that, given the highly probative nature of the evidence, it was not an abuse of discretion for the trial court to find that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, and thus admit it. *Id.*

By the same token, the Court of Special Appeals held the testimony developed during the prosecutor's re-direct questioning of Duckworth about the length of the investigation and surveillance was properly admitted because counsel had sought to establish the cocaine in the apartment belonged to Roberson, not Williams. (Ex. 6, p. 17). The prosecutor elicited testimony from Duckworth that Roberson was a visitor to Williams' residence and Duckworth had not seen her previously, refuting the possibility that the cocaine belonged to her. *Id.* By establishing Duckworth did not conduct surveillance of the property every day, the defense called into question Duckworth's premise for stating Roberson was merely a visitor. *Id.* In response the State was permitted to elicit testimony concerning the length of the investigation. *Id.* The Court of Appeals found that even if the issue had been preserved, the trial court would not have abused

its discretion in permitting the testimony because it was "highly probative of Roberson's status in the residence" and "whether the cocaine belonged to her or Williams." *Id.* at 18.   Thus, the trial court had not "abused its discretion in finding the probative value was not 'substantially outweighed by the danger of unfair prejudice.' " *Id.*

The state post-conviction court found Williams' claim of ineffective assistance for failing to argue prejudice unavailing, stating:

> As a continuation of the previous allegation, Petitioner also alleges that trial counsel rendered ineffective assistance by failing to argue the prejudicial effect of the otherwise impermissible evidence admitted by the trial court and to preserve this issue for appeal. Petitioner points out in his Petition [for post-conviction relief] that the Court of Special Appeals refused to consider the prejudicial effect of the prior bad acts evidence admitted by the trial court based on the fact that this argument had not been raised during trial and therefore was waived. Petitioner further contends that if this issue had been preserved for appeal, it would have been successful. In response, the State argues that while this issue was not preserved for appeal, the Court of Special Appeals nevertheless recognized in its opinion that the evidence objected to by Petitioner was highly probative and outweighed any prejudicial effect and therefore the trial court did not abuse its discretion by admitting this evidence. (COSA Opinion, p. 13-14)

> This Court has considered the trial transcript, the testimony given at the Post Conviction hearing, and relevant case law as well as the unreported opinion of the Court of Special Appeals of Maryland. After applying the factors enumerated in *Strickland* [*v. Washington*, 446 U.S. 668 (1984)] and *Bowers [v. State*, 320 Md. 416 (1990)], this Court finds that trial counsel's performance was not deficient with respect to the argument she made against the admission of evidence of Petitioner's prior bad acts. However, even if trial counsel did perform deficiently based on her failure to argue the prejudicial effect of the evidence, this Court finds that such deficiency did not result in prejudice to Petitioner, because the Court of Special Appeals concluded that the probative value of the testimony was not substantially outweighed by its prejudicial effect. As such, Petitioner has failed to meet his burden under the *Strickland* test.

(Ex. 13, pp. 6-7).

Williams' allegations of prejudice are conclusory and fail to demonstrate prejudice arising from the conduct of trial counsel. *See, e.g., Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1297 (4th Cir. 1992) (petitioner bears the burden of establishing prejudice). The post-

conviction court's determinations that trial counsel's performance was not deficient and Williams did not suffer prejudice are reasonable and entitled to deference under the standard for evaluating petitions under 28 U.S.C. § 2254. The factual findings of the state court are supported by the record. Given the limited scope of federal habeas review, the state post-conviction court's rejection of this claim of ineffective assistance of counsel shall not be disturbed. *See* 28 U.S.C. § 2254(d).

Insofar as Williams also claims that he is entitled to relief based on the cumulative effect of "numerous harmful errors," his claim provides no grounds for relief. First, the claim is procedurally defaulted. Williams raised a claim of ineffective assistance for cumulative error in his application for leave to appeal to the Court of Special Appeals, and as previously discussed, the application was denied summarily. (Ex. 14, p. 4; Ex. 15). Because this claim was not presented to the state post-conviction court, it is procedurally defaulted from habeas review. *See e.g. Coleman v. Thompson*, 501 U.S. 722, 749–50, (1991) (stating where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, the procedural default doctrine applies).[11]

Second, there is no merit to Williams' claim of cumulative error. Pursuant to the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990); *see also United States v. Martinez*, 277 F.3d 517, 532 (4th Cir.2002); *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009).

---

[11] Williams does not allege cause and prejudice or a fundamental miscarriage of justice to excuse procedural default. *See, e.g., Fowler v. Joyner*, 753 F.3d 446, 460 (4th Cir. 2014) ("Ordinarily, a habeas petitioner is procedurally barred from obtaining federal habeas review of a claim if he failed to raise and exhaust the claim in state court.... [When this occurs,] habeas review of the claim will only be permitted if the petitioner can demonstrate (1) cause for the default and prejudice resulting therefrom or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice.") (citations omitted).

Generally, if a court "determine[s] ... that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." *United States v. Fields*, 483 F.3d 313, 362 (8th Cir.2007). To reverse for cumulative error, the errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *Basham*, 561 F.3d at 330 (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)). In the Fourth Circuit, the cumulative error doctrine is not generally recognized because "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n. 9 (4th Cir.1998); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United States*, 711 F.Supp.2d 479, 552 (D. Md. 2010) (in the context of collateral review, review based on the cumulative effect of errors is available only where individual constitutional errors are found). Having found no ineffective assistance of trial counsel, there is no constitutional error to apply a cumulative analysis.

**3. Claim of Ineffective Assistance of Trial Counsel for Failing to Investigate the Case Sufficiently, and for Failing to File a Motion to Suppress the Search Warrant for Lack of Probable Cause**

Williams complains counsel was ineffective for failing to adequately investigate his case. The state post-conviction court rejected this claim as follows:

> Petitioner alleges that his trial counsel rendered ineffective assistance by failing to conduct adequate pre-trial investigation into the factual basis for the State's charges. In response to Petitioner's allegation, the State contends that Petitioner's trial counsel had thoroughly prepared for the case. Jennifer Aist also testified about how she prepared for Petitioner's case, explaining that prior to trial she met with her client in person to discuss his personal background, his perspective on the facts of the case, and possible witnesses and defenses.

> Having reviewed the trial transcript, considered the testimony given at the Post Conviction hearing, and contemplated relevant case law, this Court finds the testimony of Ms. Aist to be credible with regard to the time and effort she put into investigating Petitioner's case before trial, and further finds no credible evidence

> of a failure to investigate the facts of this case. Petitioner has failed to meet his
> burden of proving that trial counsel's performance was deficient or prejudicial
> with respect to the investigation of his case before trial. As such, Petitioner's
> contention does not satisfy the standard set forth in *Strickland*.

(Ex. 13, p. 11).

Williams faults counsel for failing to file a motion to suppress the search warrant of his

residence for lack of probable cause. (ECF No. 1, pp. 7-8).   In rejecting this allegation, the state

post-conviction court said:

> Petitioner alleges that his trial counsel rendered ineffective assistance by
> failing to file a pre-trial Motion to Suppress. Petitioner expanded upon this
> allegation during his Post Conviction hearing, testifying that trial counsel should
> have challenged the search warrant obtained in Petitioner's case and questioned
> whether probable cause existed to support the search warrant. In response to
> Petitioner's allegation, the State argued that Petitioner's trial counsel made a
> strategic decision not to question police detectives about the search warrant at
> trial, because the evidence used in support of the warrant is not necessarily
> admissible at trial. Furthermore, Jennifer Aist likewise testified that after reading
> over the search warrant, she believed that there was probable cause in support of
> it and no basis for challenging the warrant [during] a pre-trial hearing.
>
> After reviewing the trial transcript, considering the testimony given at the
> Post Conviction hearing, and contemplating relevant case law, this Court finds
> that Petitioner's allegation of ineffective assistance of counsel based on failure to
> file a pre-trial Motion to Suppress is without merit. Petitioner has not presented
> any evidence in support of his argument that the search warrant in this case lacked
> sufficient probable cause. Without further evidence, Petitioner has not shown that
> performance of his trial counsel was deficient or prejudicial, and his contention
> does not satisfy the standard set forth in *Strickland*.

(Ex. 13, p. 12).

The state post-conviction court also found unavailing Williams' claim of ineffective

assistance for failure to thoroughly interview the State's witnesses prior to trial. The post-

conviction court opinion reads:

> Petitioner alleges that his trial counsel rendered ineffective assistance by
> failing to thoroughly interview the State's witnesses before trial. Petitioner did not
> present any facts in support of this allegation at the Post Conviction hearing.

Having reviewed the trial transcript, considered the testimony presented at the Post Conviction hearing, and contemplated the relevant case law, this Court finds no evidence to support Petitioner's allegation that trial counsel rendered ineffective assistance by failing to thoroughly interview the State's witnesses before trial. This Court finds that trial counsel's performance with respect to dealing with State witnesses prior to trial was not deficient and did not result in prejudice to Petitioner. As such, Petitioner has failed to meet his burden under the *Strickland* test.

(Ex. 13, p. 10).

In sum, the state post-conviction court found that trial counsel's performance was neither deficient nor resulted in prejudice to Williams. It further determined that Williams presented no credible evidence that trial counsel had failed to investigate his case or thoroughly interview State's witnesses prior to trial.

Upon review of the post-conviction transcript, the court finds the state court's decision to credit trial counsel's testimony was reasonable and well-supported by the record. Trial counsel testified at the post-conviction hearing that she subpoenaed State witnesses Tiffany Swan and Schanchez Roberson in an attempt to investigate them. (Ex. 12, pp. 68-69). Trial counsel filed a motion in limine to suppress evidence. *Id*. at 46, 73; *see also* Ex. 2, pp. 6-10. Trial counsel reviewed police and lab reports. (Ex. 12, p. 75). She met with Williams several times prior to trial. *Id*. at 78-79. Further, Williams presents no evidence that the search warrant lacked sufficient probable cause. *Id*. at 61, 66-67. "Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), overruled on other grounds by, *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). Absent demonstration of deficient representation and resultant prejudice as *Strickland* and its progeny require, Williams has not met his burden to show constitutionally ineffective assistance of counsel. Accordingly, relief will be denied as to this claim.

**4. Claim of Ineffective Assistance of Trial Counsel for Failing to Effectively Cross-Examine Witnesses**

Lastly, Williams claims trial counsel rendered ineffective assistance by failing "to pursue all avenues of questioning." (ECF No. 1, p. 9). He asserts trial counsel had a "clear opportunity" to question the police detectives who testified at trial about their surveillance of him, including "failed control buys." *Id.* at 9-10.  Williams avers the police never witnessed him conducting any transactions or involved in suspicious behavior. *Id.* at 9-10.   He claims counsel "failed to highlight . . . that it was very highly probative of Detectives to assume Miss Roberson was a new arrival and couldn't have been a participant."  *Id.* at 10.

The state post-conviction court rejected this claim and stated:

> Petitioner alleges that trial counsel rendered ineffective assistance by failing to pursue all avenues of questioning during cross-examination and to ask tough questions of State's witnesses. For instance, Petitioner suggests in his Petition that trial counsel should have questioned witnesses more regarding Ms. Roberson and the fact that she was a guest in Petitioner's house who was present when detectives executed the search and seizure warrant and found drugs in the residence. Petitioner contends that if trial counsel had done this, it would have favorably impacted the outcome of his case.

> In response to Petitioner's allegations, the State contends that Petitioner's trial counsel skillfully and thoroughly explored all State witness testimony and attacked their abilities to be truthful and unbiased. Furthermore, Ms. Aist also testified during the Post Conviction hearing that whether she pursued a certain line of questioning with a witness was a matter of trial strategy. Ms. Aist explained that she does not ask questions which she believes will hurt a client's case even if the client wants her to ask these questions.

> Having reviewed the trial transcript, considered the testimony presented at the Post Conviction hearing, and contemplated the relevant case law, this Court finds no evidence to support Petitioner's allegation that trial counsel rendered ineffective assistance by failing to pursue all avenues of questioning during cross-examination. This Court finds that trial counsel's performance with respect to the manner in which she conducted cross-examination of State witnesses was not deficient and did not result in prejudice to Petitioner. As such, Petitioner has failed to meet his burden under the *Strickland* test.

(Ex. 13, pp. 7-8).

Developing a defense strategy necessarily includes deciding which questions to ask the witnesses at trial. *Gonzalez v. United States*, 553 U.S. 242, 249 (2008). Had trial counsel asked police detectives on cross-examination about their observations of Williams during their several month surveillance, the prosecutor probably would have asked them on re-direct about their surveillance in greater detail and why a search and seizure warrant had issued. (Ex. 2, pp. 140-148, 171-172).  As earlier noted, in response to trial counsel's motion in limine, the court ruled that police witnesses were limited to testifying about what they had observed on January 31, 2008. (Ex. 2, p. 9).   If counsel had posed questions on cross-examination about police observation of Williams and "failed control buys," as Williams would have preferred, the prosecutor likely would have asked for relief from the court's ruling on the motion in limine.

Williams' allegation that his trial counsel failed to effectively cross-examine witnesses does not justify relief. "[T]actical decisions such as what questions to ask of witnesses are 'virtually unchallengeable.' " *Mosely v. United States*, 2011 WL1230888 at *2 (D. Md. March 29, 2011) (quoting *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009)) (quotation marks omitted). The court finds the state court's determination involved neither an unreasonable application of the law nor an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). The state court's decision is entitled to deference and will not be disturbed.  Accordingly, federal habeas corpus relief will be denied as to this claim.

### CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has failed to make a substantial showing he was denied a constitutional right, and this court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a certificate of appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the court concludes the state post-conviction court's decision rejecting these claims was neither contrary to clearly established federal law, as determined by the United States Supreme Court, nor involved an unreasonable application of that law. The petition provides no grounds for habeas corpus relief and will be denied. A separate order follows denying the petition and declining to issue a certificate of appealability.

August 18, 2015

Date

_____/S/_____

Catherine C. Blake

United States District Judge